UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LEO BOWMAN and <br> ZIRAHEUN BOWMAN <br><br> Plaintiffs, <br><br> v. <br><br> SGT. AGNALDO MONTEIRO, <br> OFFICER WILLIAM HULL, <br> OFFICER MARK WHALEN, and <br> OFFICER BRENDAN WHEELER, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Civil Action No. 24-CV-10850-AK |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**ANGEL KELLEY, D.J.**

This case arises out of an altercation that occurred between the Plaintiffs Leo Bowman ("Mr. Bowman) and Ziraheun Bowman ("Mrs. Bowman") and the Defendant officers on April 3, 2021. The parties tell competing stories about the specifics of the night, much of which the Court cannot untangle at this stage of the litigation. Faced with three distinct motions to dismiss from Defendant Monteiro [Dkt. 26], Defendant Wheeler [Dkt. 28], and Defendants Hull and Whalen [Dkt. 30], this Court is tasked with determining whether Plaintiffs have sufficiently alleged facts to withstand dismissal. For reasons explained below, the Court **DENIES** Defendant Monteiro's Motion to Dismiss [Dkt. 26]; **DENIES** Defendant Wheeler's Motion to

Dismiss [Dkt. 28] in part and **GRANTS** in part; and **DENIES** Defendants Hull and Whalen's Motion to Dismiss in part and **GRANTS** in part [Dkt. 30].

I.  STANDARD OF REVIEW

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) test the sufficiency of the pleadings. When confronted with such a motion, the Court is required to accept as true all well-pleaded facts in a plaintiff's complaint and draw all reasonable inferences in their favor. San Juan Cable, LLC v. P.R. Tel. Co., 612 F.3d 25, 28 (1st Cir. 2010). Thus, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation and quotations omitted). The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A.G. by & through Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Fed.R.Civ.P. 8(a)(2)). At this early stage, "a claim does not need to be probable, but it must give rise to more than a mere possibility of liability," otherwise known as plausibility. Grajales v. Puerto Rico Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012). Determining plausibility "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 44 (quoting Iqbal, 556 U.S. at 679). This means "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). The Court, thus, recites only the well-pleaded allegations.[1]

---

[1] The Court relies on the well-pleaded allegations in Plaintiffs' Second Amended Complaint ("Complaint").

**II.     BACKGROUND**

On April 3, 2021, the Plaintiffs, husband and wife, were at their home, celebrating their daughter's birthday when Mr. Bowman noticed a man dressed in plain clothes taking photographs outside his house. When Mr. Bowman stepped outside, the man quickly retreated to his vehicle and drove away. In an attempt to collect the man's license plate information, Mr. Bowman followed the unknown man in his car. At the corner of Blue Hill Avenue and Almont Street in Boston, Massachusetts, Mr. Bowman was stopped by law enforcement. Several officers surrounded his vehicle. Mr. Bowman called Mrs. Bowman to let her know he was being stopped. Mr. Bowman states the police requested his driver's license and vehicle registration, but that they were giving him conflicting commands. Mr. Bowman asked the officers for their reason for the stop, but they refused to provide one. They requested he exit his vehicle.

After several moments, the man dressed in plain clothes who was seen outside Mr. Bowman's house approached the vehicle asking, "Are you Leo Bowman?" The Plaintiffs later learned that this man was Defendant Monteiro.[2] After shining his light, Defendant Monteiro told Mr. Bowman he would receive a summons in the mail and that he was free to go. When the officers dispersed and Defendant Monteiro retreated to his vehicle, Mr. Bowman left his vehicle to take a video of the license plate and talk to the bystanders who witnessed the stop.

As soon as Mr. Bowman opened his door, Defendant Monteiro allegedly ran towards him. Within moments, other officers, including Defendants Wheeler, Hull, and Whalen, joined Defendant Monteiro at Mr. Bowman's vehicle. Defendant Monteiro, using his handcuffs, allegedly punched him and struck him several times. The other Defendants grabbed Mr. Bowman and placed him on the ground. Mr. Bowman started to bleed. At this point, Mrs.

---

[2] Defendant Monteiro is a sergeant, while Defendants Wheeler, Hull, and Whalen are officers.

Bowman had arrived at the scene and inserted herself in the incident while screaming to the Defendants to stop. Mrs. Bowman was also struck. The Defendants pushed Mr. Bowman's face into the asphalt and arrested him, all while he was pleading for them to get off him so he can breathe. Mrs. Bowman stood nearby screaming and crying. Shortly after Mr. Bowman was arrested, Mrs. Bowman was also arrested.

Mr. Bowman was arrested and charged with two counts of assault and battery on a police officer, resisting a public officer, disturbing the peace, failure to submit to a police officer, failure to stop for red light(s), and making a U-turn against a posted sign. Mrs. Bowman was arrested and charged with assault and battery on a police officer, resisting a public officer, and disturbing the peace. Both Plaintiffs received a verdict of not guilty on all charges during a jury trial on June 26, 2023. Plaintiffs have alleged that they have experienced financial losses, medical injuries, and mental anguish. Both Plaintiffs continue to undergo treatment. The instant suit was filed on April 2, 2024. The Complaint asserts federal and common law claims against the various Defendants. Plaintiffs bring the following claims against all Defendants: unlawful and excessive force in violation of 42 U.S.C. § 1983 (Counts 1 and 2); assault and battery (Counts 3 and 4); false imprisonment (Counts 5 and 6); intentional infliction of emotional distress (Counts 7 and 8); malicious prosecution (Counts 9 and 10); and unlawful search and seizure in violation of the Fourth Amendment in violation of 42 U.S.C. § 1983 (Count 11). Defendants filed their respective motions to dismiss on October 24, 2025 and request partial dismissal of claims against them. The Court held oral arguments on July 24, 2025.

### III.     Body-worn Camera Footage

As a threshold question, this Court must determine if it can consider body-worn camera footage at this stage of the proceedings.  In short, it can.

Generally, when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court must limit its examination to the pleadings and any exhibits incorporated to it.  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 72 (1st Cir. 2014).  According to the Federal Rules of Civil Procedure, if the parties present evidence outside the pleadings, the motion to dismiss is generally converted into a motion for summary judgment.  Blake v. Pro. Coin Grading Serv., 898 F. Supp. 2d 365, 376-77 (D. Mass. 2012) (summarizing Fed.R.Civ.P. 12(d)).  There are, however, exceptions that permit courts to consider materials outside a complaint at the motion to dismiss stage.  Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").

Under the incorporation-by-reference doctrine exception, a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment for "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  When "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).  This includes video footage.  See

5

Cox v. Bos. Police Dep't, No. CV 22-11009-RGS, 2022 WL 17486595, at *2 (D. Mass. Dec. 7, 2022) (holding that it was appropriate to consider surveillance video footage of the incident when addressing the motion to dismiss since its authenticity was not questioned).

Defendant Wheeler submits body-worn camera footage from the night of the incident—relying on incorporation by reference—to his Motion to Dismiss. [See Dkt. 29]. The authenticity of the body-worn camera footage was not questioned until the motion to dismiss hearing on July 24, 2025.[3] Upon order from this Court, the Defendants promptly authenticated the footage. [Dkts. 47; 48]. To be clear, the Court could have taken the lack of challenge to the footage's authenticity as a waiver. Pomerleau v. W. Springfield Pub. Schs., 362 F.3d 143, 145 (1st Cir. 2004) (stating that the court has discretion to deem an argument waived based on the failure to respond to it). Relying on the Court's discretionary powers, the Court accepts Defendants' July 25, 2025 authentication and deems the body-worn camera footage properly incorporated since it is central to the claims alleged in the Complaint. The more difficult question, as explained below, is what to make of the footage. The Court moves on to the Defendants' Motions to Dismiss.

IV.  **ANALYSIS**

   **A. Monteiro's Motion to Dismiss**

Defendant Monteiro moves to dismiss the intentional infliction and emotional distress (IIED) claim that both Plaintiffs lodged against him. This motion deserves short shrift. A plaintiff bringing an intentional infliction of emotional distress claim must show that "(1) that the

---

[3] In the Opposition to the Motion to Dismiss filed by Plaintiffs' initial counsel filed on November 20, 2024, there were no challenges to the body-worn camera footage. Plaintiffs' counsel changed on May 16, 2025. During the July 24, 2025 hearing, Plaintiffs' new counsel indicated that he would like the Defendants' counsel to authenticate the footage. Upon order from the Court, Defendants' counsel filed an affidavit from the commander of the Video Evidence Unit at the Boston Police Department authenticating the footage. [Dkt. 48].

6

actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Galvin v. U.S. Bank, N.A., 852 F.3d 146, 161 (1st Cir. 2017) (quoting Polay v. McMahon, 10 N.E.3d 1122, 1128 (Mass. 2014)). Defendant Monteiro argues that the Plaintiffs have not offered specific allegations that his conduct was either intentional or outrageous.  Plaintiffs argue that Defendant Monteiro should have known emotional distress was likely; that the unprovoked and violent conduct against them was extreme and outrageous; and that his actions were the cause and the resulting distress was severe.  Drawing all inferences in favor of the Plaintiffs, the Plaintiffs have sufficiently pleaded that the acts of Defendant Monteiro were extreme and outrageous, particularly the punching and the subsequent arrests without any clear explanation.  Any concerns that the Complaint was conclusory are remedied by the impassioned body-worn camera footage submitted by Defendant Wheeler.  Additionally, several courts in the First Circuit refuse to dismiss an IIED claim without a more complete factual record if the complaint is not conclusory.  See Martinez v. Wolferseder, 997 F. Supp. 192, 195 (D. Mass. 1998).  Accordingly, Defendant Monteiro's Motion to Dismiss is denied.

### B. Wheeler's Motion to Dismiss

Next, Defendant Wheeler moves to dismiss the following claims by both Plaintiffs: Section 1983 claim for unlawful and excessive force; assault and battery; false imprisonment; and malicious prosecution.  For reasons explained below, the Court dismisses the Section 1983,

assault and battery, and malicious prosecution claims brought by Mr. Bowman. All other claims survive.

### 1. Section 1983 for Unlawful and Excessive Force under the Fourth Amendment

To prevail on an excessive force claim under the Fourth Amendment, a plaintiff must show that "the defendant employed force that was unreasonable under all the circumstances." Morelli v. Webster, 552 F.3d 12, 23 (1st Cir. 2009). This standard requires a review into the circumstances of the particular case to determine whether the use of force was reasonable. This includes an inquiry into: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989). The First Circuit has also made it clear that the reasonableness inquiry "must make allowance[s] for the need of police officers to make split second judgments[.]" Parker v. Gerrish, 547 F.3d 1, 9 (1st Cir. 2008) (internal quotations and citation omitted).

Defendant Wheeler argues that, for Mr. Bowman's claim, the body-worn camera footage clearly shows he never came into contact with Mr. Bowman.[4] Specifically, he contends that the body-worn camera footage belies the Complaint. For Mrs. Bowman's claim, Defendant Wheeler argues that the Complaint does not allege specific acts by him against Mrs. Bowman and, according to the footage, any contact was de minimis. As a backup argument, Defendant Wheeler argues that, even if contact occurred, he is entitled to qualified immunity.

Regarding Mr. Bowman, the body-worn camera footage reveals that Defendant Wheeler arrived after the other Defendants had already made contact with Mr. Bowman. According to

---

[4] Mr. Bowman's counsel conceded this fact during oral argument on July 25, 2025, when the video was played in court.

the footage, no physical contact between Defendant Wheeler and Mr. Bowman was ever made. Defendant Wheeler arrived when Defendant Monteiro struck Mr. Bowman, as Mr. Bowman was being pulled from his vehicle. The body-worn camera reveals no engagement with Mr. Bowman. Based on this fact, the Court must dismiss this claim. See Aaron v. City of Lowell, 666 F. Supp. 3d 102, 129 (D. Mass. 2023) (holding that in event where a defendant has not touched a plaintiff, an excessive force claim fails); see also Watson v. Perez, 168 F. Supp. 3d 365, 371 (D. Mass. 2016) (same).

Mrs. Bowman's claim, however, is more complicated. The body-worn camera footage is unclear and the Court cannot discern whether contact was made, let alone whether it was severe. At this stage, the Complaint sufficiently alleges that Defendant Wheeler made contact with her and that his actions were objectively unreasonable, given the fact that she did not pose an immediate threat to the safety of anyone and she did not resist arrest. The Court finds that Mrs. Bowman has made a plausible claim that excessive force was used against her in violation of the Fourth Amendment.

Defendant Wheeler contends that, even if Mrs. Bowman stated an actionable claim for excessive force under the Fourth Amendment, this claim should still be dismissed because he is entitled to qualified immunity. Any force, he argues, was reasonable to overcome resistance. The Court finds it inappropriate to apply qualified immunity when the facts surrounding the alleged constitutional violation need to be developed. See Giragosian v. Bettencourt, 614 F.3d 25, 29 (1st Cir. 2010) (concluding that courts usually wait until summary judgment to develop the first prong of qualified immunity analysis, which is "whether the facts alleged make out a violation of a constitutional right."). When the qualified immunity doctrine is invoked as grounds for a motion to dismiss, it is "almost always a procedural mismatch" because the court

lacks the "robust factual record" it needs to decide if it is appropriate. Aaron, 666 F. Supp. 3d at 123. This is especially unsuccessful at this stage since a plaintiff faced with a motion to dismiss is entitled to all reasonable inferences from the facts alleged. Accordingly, the Court will deny Defendant Wheeler's qualified immunity defense. Defendant Wheeler can invoke this doctrine later in litigation.

### 2. Assault and Battery

The parties make similar arguments for assault and battery. This makes sense, since plaintiffs typically maintain "assault and battery claims against police officers who use excessive force in conducting an arrest." Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir.2010). When a party brings both claims together, the Court's "determination of the reasonableness of the force used under § 1983 controls our determination of the reasonableness of the force used under the common law assault and battery claims." Id. It would serve no purpose to plod further into this claim. Adopting the Section 1983 reasoning above, the Court will grant the motion to dismiss the assault and battery claim against Mr. Bowman but deny it for Mrs. Bowman.

### 3. False Imprisonment

In Massachusetts, false imprisonment is the "intentional and unlawful confinement of a person, either directly or indirectly, of which the person confined is conscious or is harmed by such confinement." Goddard v. Kelley, 629 F.Supp.2d 115, 129 (D. Mass. 2009) (quoting Jonielunas v. City of Worcester Police Dep't, 338 F.Supp.2d 173, 177 (D. Mass. 2004)). "A police officer is liable for false imprisonment if he arrests, or causes the arrest, of the plaintiff, without probable cause." Id. Defendant Wheeler moves to dismiss Mr. Bowman's false imprisonment claim under three arguments. First, he argues Mr. Bowman was allegedly free to go after the stop. Second, he argues that Mr. Bowman allegedly did not comply with officers.

Lastly, Defendant Wheeler argues that the body-worn camera footage shows that he did not arrest Mr. Bowman.  For Mrs. Bowman's claim, Defendant Wheeler argues that Mrs. Bowman was walking the scene freely and he only stepped in when she inserted herself in the incident, thus justifying the arrest.  Moreover, he argues that the footage does not show that he arrested her.  Plaintiffs argue that all Defendants acted in concert to falsely imprison them.  Additionally, the Plaintiffs argue that the footage is inconclusive.

It is clear that the linchpin of a false imprisonment claim is probable cause.  See Diggs v. Mills, No. CIV.A. 10-11688-JLT, 2011 WL 3022257, at *2 (D. Mass. July 21, 2011) ("Because unlawfulness is one element of false imprisonment, the existence of probable cause to effectuate an arrest often determines whether a plaintiff was falsely imprisoned."); see also Brown v. Butler, No. 3:17-CV-30030-MAP, 2017 WL 9673712, at *14 (D. Mass. Dec. 22, 2017) (dismissing false imprisonment claim since probable cause existed).  It is not clear to the Court whether the Defendants had probable cause.  Moreover, at this stage of litigation, the footage is not clear as to what Defendant Wheeler directly or *indirectly* did during the moments that led to their respective arrests.  Factual disputes are not resolved on a motion to dismiss, and the body-worn camera footage does not conclusively resolve that debate.  Accordingly, the Court will deny the motion to dismiss the false imprisonment claim for both Plaintiffs.

### 4. Malicious Prosecution

In order to prevail on a malicious prosecution claim, "a plaintiff must show that (1) he suffered damages because the defendant commenced an action without probable cause, (2) for an improper purpose, and (3) that the original action terminated in the plaintiff's favor." Osman v. Dwan, No. 20-CV-11356-NMG, 2021 WL 11505292, at *3 (D. Mass. July 30, 2021).  The nub of this claim is "'interference with the right to be free from unjustifiable litigation.'"  Chervin v.

Travelers Ins. Co., 448 Mass. 95, 102 (2006) (quoting Foley v. Polaroid Corp., 381 Mass. 545, 552 (1980)).

Defendant Wheeler argues that there are no allegations that he had any involvement in initiating the prosecution. As evidence of this, he points to the criminal complaint, which was signed by Defendant Monteiro and included Defendant Hull's name in the case information. [Dkt. 40-1]. The Court will consider this document at this motion to dismiss stage since it is central to the Plaintiffs' claims.[5] The Court agrees that, without a well-pleaded allegation that Defendant either initiated criminal proceedings or swore in the criminal complaint, this claim must be dismissed.

### C. Hull and Whalen's Motion to Dismiss

Defendants Hull and Whalen bring a singular motion to dismiss on behalf of both of them. They move to dismiss the malicious prosecution by both Plaintiffs. They also move to dismiss the following claims by Mrs. Bowman: Section 1983 Unlawful and Excessive Force; assault and battery; and false imprisonment. For reasons explained below, the only claim dismissed is Plaintiffs' malicious prosecution claim for Defendant Whalen.

#### 1. Section 1983 – Unlawful and Excessive Force under the Fourth Amendment

As explained above, to prevail on an excessive force claim under the Fourth Amendment, a plaintiff must show that "the defendant employed force that was unreasonable under all the circumstances." Morelli, 552 F.3d at 23. Defendants Hull and Whalen argue there are no individualized allegations of striking or restraining by them, only mere presence. Additionally, they argue that any force by them was reasonable to overcome resistance from Mrs. Bowman.

---

[5] Plus, Plaintiffs' counsel at the Motion to Dismiss hearing indicated that this claim would be applicable to "at least" Defendants Hull and Monteiro. Plaintiffs' counsel did not discuss Wheeler or Whalen.

12

Defendants Hull and Whalen did not submit any body-worn camera footage, and Defendant Wheeler's footage does not capture all engagement between them and Mrs. Bowman. According to Plaintiffs' Complaint, Mrs. Bowman sustained injuries after the Defendants, acting in concert, used force against her that was both unreasonable and unnecessary. Taking Mrs. Bowman's well-pleaded allegations as true, this claim survives the Defendants' Motion to Dismiss.

### 2. Assault and Battery

As stated above, when a plaintiff brings both a Section 1983 claim for excessive force and an assault and battery claim, the Court's "determination of the reasonableness of the force used under § 1983 controls our determination of the reasonableness of the force used under the common law assault and battery claims." Raiche, 623 F.3d at 40. For the same reasons stated above for the excessive force claim, the Court will deny the Motion to Dismiss Mrs. Bowman's assault and battery claim.

### 3. False Imprisonment

Defendants Hull and Whalen also move to dismiss Mrs. Bowman's false imprisonment claim against them. They, once again, rely on the body-worn camera footage to argue that they did not arrest or restrain Mrs. Bowman. The Court is unable to reach the same conclusion. The footage does not show who arrested Mrs. Bowman, but it does include instructions from someone on the scene demanding her arrest. In addition to being unable to discern who arrested Mrs. Bowman, the Court is also unable to determine if there was even probable cause to

effectuate her arrest.  Accordingly, this claim survives the Defendant Hull and Whalen's Motion to Dismiss.  See Brown, No. WL 9673712, at *14.

### 4. Malicious Prosecution

Lastly, Defendants Hull and Whalen move to dismiss the Plaintiffs' malicious prosecution claim against them.  This claim is brought by both Plaintiffs.  In support of their Motion to Dismiss, Defendants Hull and Whalen argue that the Complaint contains no allegations that either of them had any involvement in swearing out the complaint or initiating prosecution.  However, the criminal complaint was signed by Defendant Monteiro and included Defendant Hull's name in the case information.  [Dkt. 40-1].  As stated above, the Plaintiffs must establish that a "defendant commenced or continued the criminal proceedings against the Plaintiff."  Watson v. Mita, 396 F. Supp. 3d 220, 225 (D. Mass. 2019).  A person "who takes an active part in continuing or procuring the continuation of criminal proceedings initiated . . . by another is subject to the same liability for malicious prosecution as if he had then initiated the proceedings."  Mitchell v. City of Boston, 130 F.Supp.2d 201, 215 (D.Mass.2001) (citing Restatement (Second) of Torts § 655 (1976)).  Contributing to a criminal complaint can certainly be understood as "taking part in continuing or procuring the continuation of criminal proceedings" against the Plaintiffs.  This Court finds that at this stage of the litigation, the Plaintiffs' allegations are sufficient to state a claim for malicious prosecution against Defendant Hull, but not Defendant Whalen.

## V. CONCLUSION

When all is said and done, this case moves on, largely intact.  The Court removes the claims which, under no legal reality, can survive.  These include a Section 1983 claim for excessive and unlawful force against Defendant Wheeler; an assault and battery claim against

14

Defendant Wheeler; a malicious prosecution claim against Defendant Wheeler; and a malicious prosecution claim against Defendant Whalen. All other claims survive, including the claims the Defendants did not move to dismiss. For the foregoing reasons, Defendant Monteiro's Motion to Dismiss is **DENIED**. Defendant Wheeler's Motion to Dismiss is **DENIED** in part and **GRANTED** in part. Defendants Hull and Whalen's Motion to Dismiss is **DENIED** in part and **GRANTED** in part.

      **SO ORDERED.**

Dated: July 31, 2025                          /s/ Angel Kelley
                                                              Hon. Angel Kelley
                                                              United States District Judge